**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-283 (JMC)** |
| **v.** | : | |
| | : | |
| **ULISES WILKINSON,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Ulises Wilkinson ("Wilkinson") has pleaded guilty to two petty offense misdemeanors, in violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Four) and in violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Five). For the reasons set forth herein, the government requests that this Court sentence Wilkinson to sixty days' incarceration on Count Four and thirty-six months' probation on Count Five. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.    Introduction

Defendant Ulises Wilkinson, a 26-year-old grocery store worker, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful

transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

The government's recommendation is supported by Wilkinson's (1) entry into the sensitive areas of the Senate Gallery and Third Floor of the Capitol; (2) close proximity to violence against police in the Capitol; (3) entry to the Capitol through the Upper West Terrace door, an emergency exit while an alarm was blaring; (4) presence when multiple police officers tried to clear the Rotunda; (4) occupation of the Capitol for approximately 42 minutes. While Wilkinson has expressed remorse and self-surrendered, jail time is still appropriate because of those aggravating factors and the need to deter others from such conduct too.

The Court must also consider that Wilkinson's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Wilkinson's crime support a sentence of sixty days' incarceration on Count Four, and to thirty-six months' probation on Count Five in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. See Statement of Offense, ECF No. 25, ¶¶ 1-7.

*Defendant Wilkinson's Role in the January 6, 2021 Attack on the Capitol*

In January 2021, Wilkinson lived in Streamwood, Illinois.  On January 5, 2021, he flew from Chicago to Washington, D.C. ECF 25, ¶ 8.

On January 6, 2021, Wilkinson attended the former President's "Stop the Steal" rally held near the National Mall in Washington, D.C.  ECF 25, ¶ 8, 9. Wilkinson is depicted below, wearing a yellow construction vest with gray and orange vertical stripes, a black hood over a black ball cap, and a neck scarf. *See Image 1.*  Throughout the day, Wilkinson carried with him two pieces of white cardboard, approximately 2 feet by 3 feet in dimension.  The cardboard signs displayed handwritten text stating "Move Mitch! Get out the way!" and "Free Assange!" in large black letters. ECF 25, ¶ 10.[2]  Wilkinson was captured on open-source video with two of the signs.

---

[2] "Mitch" presumably referred to the Minority Leader of the United States Senate, Kentucky Senator Mitch McConnell. Julian Assange founded WikiLeaks in 2006 and published a series of classified documents that were stolen by United States Army intelligence analyst Chelsea Manning.



*Image 1, Wilkinson (circled in yellow) at Rally near Washington Monument (source: open-source video by WEBERZWAYFILMS)*

From the rally, Wilkinson walked to the Capitol and entered the restricted area on the West Front of the Capitol.  ECF 25, ¶ 9.  Wilkinson approached the Lower West Plaza of the Capitol near a temporary metal scaffolding that was set up in preparation of the inaugural ceremonies scheduled for January 20, 2021.  Wilkinson joined the mob and walked up the stairs underneath the covered scaffolding.  Rioters were climbing the sides of the scaffolding and had torn the white canvas covering off the scaffolding in multiple places.  Wilkinson took photographs with his cell phone of the West Plaza and the interior of the damaged scaffolding.  ECF 25, ¶ 11, *see Images 2 and 3.*

 

*Images 2, 3, Photos from Wilkinson's cell phone (file names "Capture4New.JPG" and "Capture16.JPG")*

Wilkinson climbed the stairs under the scaffolding to the Upper West Terrace.   At approximately 2:33 p.m., rioters breached an emergency exit door, known as the Upper West Terrace Door.   Wilkinson entered the U.S. Capitol through the Upper West Terrace Door at 2:35 p.m.  *See Exhibit A, Image 4*.  This door was not a public entrance to the Capitol, and when the door was breached, a loud alarm sounded.  ECF 25, ¶ 12.



*Image 4, Screenshot from Exhibit A, U.S. Capitol surveillance video, showing Wilkinson (circled in yellow) entering the U.S. Capitol through Upper West Terrace Door..*

Inside the Capitol, Wilkinson went up a flight of stairs to the Rotunda on the second floor. There, Wilkinson took pictures of other rioters in the Rotunda.  ECF 25, 13.  At approximately 2:38 p.m., Wilkinson left the Rotunda and entered a lobby adjacent to the East Rotunda door.  *See Exhibit B, Image 5.*



*Image 5, Screenshot from Exhibit B, screenshot from U.S. Capitol surveillance video, showing Wilkinson (circled in yellow) inside the lobby adjacent to the East Rotunda Door..*

At that time, vastly outnumbered U.S. Capitol Police Officers were trying to prevent rioters from entering the Capitol through the East Rotunda door.  Rioters inside the Capitol assaulted the police officers  and forced the door open.  Wilkinson used his cell phone to photograph the rioters as they assaulted police officers.  Wilkinson then went up a staircase to the third floor of the Capitol. ECF 25, ¶ 14, *see Images 6, 7.*

 

*Images 6, 7, from Wilkinson's cell phone (file names "Capture9New.JPG" and
"Capture13New.JPG")*

At approximately 2:42 p.m., Wilkinson and other rioters entered a hallway outside the
Senate Gallery on the third floor of the Capitol. The Senate Gallery is located directly above the
Senate Chamber. A few U.S. Capitol Police officers guarded multiple doors leading to the Senate
Gallery. ECF 25, ¶ 15. Rioters pushed the police officers away from the doors to the Senate
Gallery. Wilkinson was very close to the initial fight with police officers, but he backed away
from the rioters. As the rioters pushed the police officers down the hall, Wilkinson left the lobby
and entered the Senate Gallery. *See Exhibit C, Image 8.*



*Image 8, Screenshot from Exhibit C, Wilkinson (circled in yellow) on Third Floor of Capitol outside the Senate Gallery from U.S. Capitol surveillance video*

Wilkinson stayed in the Senate Gallery for approximately 30 seconds, then re-entered the hallway.  He re-entered the Senate Gallery through another door.  He stayed in the Senate Gallery a few more minutes and took pictures with his cell phone of other rioters in the Senate Gallery. *See Images 9, 10.*  He exited from the Senate Gallery and walked towards the stairs.  ECF 25, ¶ 15.

 

*Images 9, 10, Photos from Wilkinson's cell phone of the Senate Gallery (file names "Capture11New.JPG" and "Capture7New.JPG")*

Wilkinson returned to the Rotunda about 2:54 p.m.  He lifted his signs and paraded around the Rotunda for several minutes.  He held up the white cardboard sign that stated "Move Mitch! Get out the way!".  *See* Exhibit D, U.S. Capitol surveillance video.  Wilkinson spoke to another rioter who used his phone to take a photograph of Wilkinson and this sign. ECF 25, ¶ 16, *see Image 11*.



*Image 11, Wilkinson in the Rotunda of the Capitol (Wilkinson's cell phone, file name "Capture1New.JPG")*

Wilkinson watched other rioters confront officers in the Rotunda and displayed another sign that stated, "Liz Cheney…war money".  *See Exhibit D, Images 12, 13.*



*Images 12, 13, Wilkinson in Rotunda, screenshots from Exhibit D, open source video Inside the Capitol Building Breach video 3 – THE CORRECT VIEWS 01/06/2021 (file name uZ4MeYbSLh94SzW5R.mp4)*

At approximately 3:03 p.m., a group of police officers arrived in the Rotunda and began to clear it of rioters.  Wilkisnon did not leave the Rotunda until approximately 3:12 p.m.  ECF 25, ¶ 17, Exhibit E.  He exited from the U.S. Capitol through the East Rotunda door to the East Plaza at approximately 3:17 p.m.  Wilkinson was inside the U.S. Capitol for approximately 42 minutes.  ECF 25, ¶ 18.

On or about April 26, 2021, Wilkinson wrote a note on his phone about his actions on January 6, 2021. *See Image 14*.  The note was modified on August 2, 2022.  In this note, Wilkinson admitted going inside the Capitol, including the Senate Gallery, and he saw Trump supporters battling with Capitol police officers.  He admitted he heard rioters ask where Nancy Pelosi and the other politicians were.  Wilkinson said he chanted "1776" while holding up his signs.  Wilkinson expressed regret for his actions in the note.  ECF 25, ¶ 19.



Earlier this year, I made one of the worst mistakes of my life. I went inside the United States Capitol on January 6th, 2021. That was the day the US Capitol was breached by Trump supporters. I'm writing this now just in case if I get arrested for storming the Capitol. You know how people say that criminals regret committing crimes once they're caught? Not the case with me. I regret storming the Capitol and I haven't been caught (yet). And I've regretted it since the moment I stepped foot inside.

Early on January 6th, I was hanging with my friends from DC and we attended the Trump rally at the Eclipse. After the rally ended, we marched on over to the US Capitol. Upon descending on Capitol grounds, I noticed there was a lot of action near the Capitol. I left my friends and I headed on over to see what was going on. I saw Trump supporters battling with Capitol police officers.

Fast forward, I managed to climb up towards the Inauguration steps with a crowd. Half of them stayed at the steps and half of them began running towards a door that was breached. They ran because they noticed that a police officer was chasing us, so I ran with them going inside that breached door, into the Capitol.

Now, I don't remember the nitty gritty of what happened inside the Capitol (eye-witness), but here's what I remember. I wandered through the Capitol (senate wing). I do recall a few protesters (or rioters, whatever the fuck you wanna call them), asking where Nancy Pelosi and the other politicians where. I do remember chanting 1776 (cringe, I know) while holding up my protest signs with me.

I eventually found myself with a huge crowd and we went inside the Senate Gallery.

*Image 14, Copy of a Note saved on Wilkinson's phone (file name "NotesCaptureNew.JPG")*

*Wilkinson's Pre-arrest Interview with the FBI*

On August 3, 2022, Wilkinson gave a voluntary interview to Federal Bureau of Investigation agents.  ECF 25, ¶ 20.  Wilkinson told the agents he attended the rally with friends he met in D.C. in November 2020.  Wilkinson said that after the initial rally, he followed the crowd to the Capitol building.  Wilkinson admitted he climbed the steps set up for the Inauguration, and he saw police officers being physically attacked.  Wilkinson said he did not engage in any physical violence, but entered the Capitol through a breached door and followed the crowd inside.  He entered the Rotunda area, but said he stayed away from any violent altercations he saw.  Wilkinson saw the door leading to the Senate Gallery above the Senate Chamber was open and he walked

inside.  He saw two other rioters engaging in a physical altercation, so he exited the Senate chamber.  Wilkinson returned to the Rotunda and exited the Capitol.  Wilkinson said he left Washington on January 7, 2021.  He admitted that he entered the Capitol and his actions within the Capitol on January 6, 2021.  He identified himself in photographs provided by the agents.  He provided his cell phone to the FBI to search and image, including the note created April 26, 2021. Wilkinson told officers he had been invited to join the Proud Boys in rallies leading up to January 6, but he refused.  He did not have any contact information for the individuals he met at rallies in D.C.  He expressed remorse for his actions.

Wilkinson maintained contact with FBI agents over several months.  He self-surrendered on his federal charges on May 30, 2023.

<em>The Charges and Plea Agreement</em>

On August 21, 2023, the United States charged Wilkinson by a five-count Information with violating 18 U.S.C. §§ 1752(a)(1), (a)(2), and 40 U.S.C. §§ 5104(e)(2)(B), (D), and (G). On January 18, 2024, pursuant to a plea agreement, Wilkinson pleaded guilty to Counts Four and Five of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). ECF 24. By plea agreement, Wilkinson agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Wilkinson now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Wilkinson faces up to six months of imprisonment and a fine of up to $5,000. Wilkinson must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

12

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of sentence of sixty days' incarceration on Count Four, and thirty-six months' probation on Count Five in this case.

A.  **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Wilkinson's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Wilkinson, the absence of violent or destructive acts is not a mitigating factor. Had Wilkinson engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Wilkinson's case is that he entered the Senate Gallery, a highly restricted area of the Capitol.  Wilkinson was in the Capitol for approximately 42 minutes, and during this time, Wilkinson moved through several areas of the Capitol with impunity. In addition to the Senate Gallery, Wilkinson paraded through the Rotunda, East Rotunda lobby, and lobby outside the Senate Gallery.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of sixty days' incarceration on Count Four, and thirty-six months' probation on Count Five in this matter.

### B.  Wilkinson's History and Characteristics

As set forth in the PSR, Ulises Wilkinson does not have any criminal history.  ECF 29, ¶¶ 32-38.  He has not served in the military.  He reported to probation that he is employed part-time in the bakery with a Jewel-Osco in Illinois.  Wilkinson has been compliant with his conditions of pre-trial release.   For additional relevant information, including possible mitigation, the government has filed a supplement under seal.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

14

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to Wilkinson also weighs in favor of a term of incarceration. The government's recommendation is supported by Wilkinson's actions on January 6.  First, Wilkinson entered sensitive areas of the Capitol, including the Third Floor and the Senate Gallery.  ECF 25, ¶ 15.  Wilkinson entered the Senate Gallery twice and took photographs of the rioters in the Gallery on his phone.  ECF 25, ¶ 15.  Second, Wilkinson repeatedly was in close proximity to other rioters who were violent with police officers – both inside and outside the Capitol.  Wilkinson saw rioters battling the police officers outside the Capitol, but he continued forward and entered the Capitol.  ECF 25, ¶ 19, Image 14.  Wilkinson was near rioters who attacked officers in the lobby by the East Rotunda doors, and he took pictures of the rioters on his phone.  ECF 25, ¶ 14, Exhibit B.  Wilkinson was near rioters that fought with police officers on the Third Floor outside the Senate Gallery.  ECF 25, ¶ 15.  As these rioters pushed police down the Third Floor hallway, Wilkinson took advantage of the absence officers guarding the doors to the Senate Gallery, and he entered the Senate Gallery.  ECF 25, ¶ 15, Exhibit C.  Third, Wilkinson entered the Capitol through the Upper West Terrace door within two minutes of the initial breach of that door, despite the overwhelming sound of the emergency door alarm that had been triggered by the breach.  ECF 25, ¶ 12, Exhibit A.  Fourth, when police officers

entered the Rotunda to clear the rioters at 3:03 p.m., Wilkinson remained in the Rotunda for about another ten minutes before he exited through the East Rotunda doors.  ECF 25, ¶ 17.  Finally, Wilkinson remained inside the Capitol for approximately 42 minutes, travelling through multiple areas in the Capitol.  ECF 25, ¶ 18.  Wilkinson solicited another rioter to take his picture in the Rotunda when he displayed a sign that stated "Move Mitch! Get out the way!", and he displayed other signs inside and outside of the Capitol sending messages of "Liz Cheney…war money", and "Free Assange".  ECF 25, ¶ 10, Images 1, 11, 12, 13, Exhibit D.

Once FBI agents identified Wilkinson, he provided a voluntary pre-arrest interview and maintained contact with the agents.  While Wilkinson has accepted responsibility by stipulating to all of the facts underlying his guilt and resolving his case via a plea, and he has expressed remorse for his actions to officers, his conduct on January 6 is obviously highly troubling.  Wilkinson encouraged other rioters on January 6 to challenge the elected officials, he witnessed and documented violence against officers, and he entered sensitive areas of the Capitol.  With the 2024 presidential election approaching, a rematch on the horizon, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Wilkinson in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL

Court must sentence Wilkinson based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Wilkinson has pleaded guilty to Count Four of the Information, charging him with Disorderly and Disruptive Conduct in a Restricted Building and Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D), and Count Five of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.  Wilkinson's entry into the Senate Gallery is particularly aggravating and makes his crimes more serious than those of January 6 defendants who remained in hallways or central, more public spaces, such as the Rotunda.

In *United States v. James Little*, Case No. 21-cr-315 (RCL), the defendant pled guilty to a single count of 40 U.S.C. § 5104(e)(2)(G).  The defendant admitted seeing police deploy tear gas

---

BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

and fire rubber bullets to disperse rioters attempting to enter the Capitol.  The defendant entered into the Senate Gallery where he took photographs of himself and sent the photographs to trusted friends.  Defendant fist bumped other rioters in celebration of their breach of the Capitol, also while in the Capitol, he sent a text to an individual in which he boasted, "We just took the Capitol," and minutes later sent another text stating, "We are stopping treason! stealing elections is treason! We're not going to take it anymore!".  Judge Lamberth sentenced defendant to 60 days incarceration, and 36 months' probation.  This sentence was later reversed on appeal because a single 5104 conviction could not support both incarceration and probation.  Judge Lamberth resentenced defendant to 150 days jail, with credit for time served (60 days) and time served on probation (30 days).

In *United States v. Janet Buhler*, Case No. 21-cr-510 (CKK), the defendant pled guilty to a single count of 40 U.S.C. § 5104(e)(2)(G).  The defendant entered and remained in the Senate Gallery thirty minutes after Senators and the Vice President had to be evacuated from the Chamber. The defendant cheered as rioters physically crushed U.S. Capitol Police ("USCP") officers at the East Rotunda Door.  The defendant deleted photographs from her phone documenting her time inside the United States Capitol.  She ignored several red flags, including the sounds of flashbangs being detonated, the plumes of smoke clouding the West Front of the Capitol Building, rioters climbing the scaffolding and tearing down the white tarp covering the northwest staircase, and shards of glass scattered on the ground outside the Senate Wing Door. Judge Kollar-Kotelly sentenced the defendant to 30 days incarceration, followed by 36 months' probation.

In this case, Wilkinson was aware that he was not allowed in the Capitol.  In his April 26, 2021, note, Wilkinson admitted knew the Upper West Terrace door had been "breached", and he ran into the door with other rioters because "a police officer was chasing us." (ECF 25, ¶ 19).

Wilkinson denied that he committed violence against, police officers.  ECF 25, ¶ 20.  However, Wilkinson took photographs of the violence against officers (Exhibit B, Images 6, 7) and he used the chaos created by the violence against officers to enter the Senate Gallery (Exhibit C, Image 8). He entered the Senate Gallery twice, taking photographs of rioters in this sensitive area.  ECF 25, ¶ 15, *see also* Images 9, 10.  Wilkinson remained in the Rotunda until officers had spent several minutes working to clear the Rotunda of rioters.  ECF 25, ¶ 17, Exhibit E.  The breadth and scope of Wilkinson's acts were significant, like those of defendants Little and Buhler, and warrant a similar level of punishment.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Wilkinson must pay $500 in restitution, which reflects in part the role Wilkinson played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damage to the United States Capitol, as well as additional losses to the Metropolitan Police Department" as of July 7, 2023, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies. *Id.* As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD. Wilkinson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 79.

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI.     Fine

Wilkinson's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 for Count Four and $5,000 for Count Five. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider Wilkinson's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1).  Here, Wilkinson's financial assets set forth in the PSR suggest that Wilkinson is unable, and is unlikely to become able, to pay a fine.  However, community service may be substituted for a fine in this case where a defendant is unable to pay a fine.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to sentence of sixty days' incarceration on Count Four, thirty-six months' probation on Count Five, 60 hours of community service and $500 in restitution in this case.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Wilkinson's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Lynnett M. Wagner*
Lynnett M. Wagner
Assistant United States Attorney

Nebraska Bar No. 21606
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, DC 20530
Phone: (402) 661-3700
Lynnett.m.wagner@usdoj.gov
